WILLIAM J. HYDE
vs.
JOHN AND HAMILTON EASTER
} SEPTEMBER TERM, 1847.

[PARTNERSHIP—PARTNERS.]

THE rule that the carrying the stock of an old firm into the business of a new one, entitles a partner of the old firm to treat the new trade as a continuation of the old business, and to claim such proportion of the profits as he might have claimed if the old trade had been continued, is not a universal one.

The right to share in the profits resulting from a continuation of the business after dissolution, is founded upon the exposure of the property of the partner who goes out to the risk of the new business, and if such partner has no property to be thus exposed, the principle cannot apply.

This rule is not applicable to the present case, where the *whole capital* was furnished by the continuing partners, and the out-going partner had at the time of dissolution drawn more than his share of the profits, and the written articles of co-partnership provided for its termination in various contingencies in precise terms, and the partnership was in fact dissolved in exact conformity with the articles.

[The facts of this case are fully stated in the opinion of the Chancellor.]

THE CHANCELLOR:

It appears in this case that on the 1st day of February, 1842, the complainant and the defendants entered into written articles of copartnership, for the purpose of carrying on the dry goods business, in the city of Baltimore, for the space of four years, under the name and style of Wm. J. Hyde & Easter, unless sooner dissolved in the mode stipulated in the contract.

The capital was to be furnished by the defendants, and the management of the business subject to their advice and counsel, was confided to the plaintiff, who was to devote his time and attention exclusively thereto; and by one of the stipulations it was agreed between the parties that "the privilege should be and was reserved to the defendants, that if during the continuance of the copartnership they should, in their judgment, think that the said William J. Hyde is not conducting the business of the firm in a manner so as to redound to their advantage, the right is reserved to them of entering the premises and taking possession of the stock of goods on hand, the books and effects of the firm, and declaring the partnership dissolved; and after the payment of all the liabilities of the firm, paying to the said William J. Hyde, in merchandise, at the cost thereof, any portions of the profits that may have accrued to him."

There were other stipulations looking to a termination of the partnership from different causes, which it is not deemed necessary to notice, and then it was agreed that the profits upon the dissolution should be divided in the proportion of one-third to each party.

It further appears, that the parties commenced and carried on business according to the terms of these articles, the capital being furnished by the defendants, and the labor and necessary attention by the plaintiff, until the 31st of January, in the year 1843, when the partnership was, by the defendants, declared to be dissolved, and the stock in trade, books and other effects of the firm, were taken possession of by them.

Afterwards, on the 1st of February following, the plaintiff filed his bill in this court, in which, after setting forth the articles of copartnership and averring the due and faithful per-

formance of all the stipulations on his part to be performed, and the realization of large profits by his good management of the business of the firm, he alleged that the defendants had, in the manner stated, declared the copartnership to be terminated, and were removing the stock and property of the firm to some other place, where they were carrying on a business in which the complainant had no interest.

Upon this bill, which contained many other averments of misconduct on the part of the defendants, and which prayed in a certain event, that the affairs of the firm might be wound up under the directions of the court, and the property distributed according to the rights of the parties, the Chancellor, according to one of its prayers, granted an injunction. Afterwards, the answer of the defendants being filed denying the misconduct imputed to them, an appeal from the order granting the injunction was prayed and the order reversed with costs, by the Court of Appeals, at June term, 1843, and the cause remanded to the Court of Chancery for further proceedings.

It was then, by an order passed on the 1st of May, 1845, referred to the Auditor to state an account between the parties, from the pleadings and proofs then in the cause and such other proofs as should, within a limited time, be laid before him. This duty the Auditor has performed, stating and reporting sundry accounts, to which the parties have filed exceptions, and these having been argued by their solicitors, in writing, are submitted for decision.

It appears by a settlement of the affairs of this concern on the 31st of January, 1843, when the partnership was dissolved, as before stated, that there was of merchandise on hand, the sum of $34,985 19, and other assets amounting with the merchandise to the sum of $67,988 44, from which deducting the liabilities of the firm, there remained a balance of $4685 94, which, according to the articles of copartnership, was to be divided in the proportion of one-third to each partner, and gives to each the sum of $1561 98. It appears further by the same settlement, however, that the complainant had drawn from the firm, and was at that time indebted to it in the sum of $1697 83. Exceeding by $135 85 his proportion of the profits.

We have seen that according to the articles of co-partnership, the proportion of profits due the complainant, after the payment of the liabilities of the firm, was to have been paid him in merchandise at the cost thereof, and, consequently, assuming that the merchandise mentioned in the balance-sheet, or settlement, on the 31st of January, 1843, are properly valued, and no attempt has been made to show the contrary, the complainant instead of being a creditor is a debtor to the firm.

It appears, however, that upon the dissolution of the partnership, the defendants took possession of the merchandise and other assets of the old firm, of which the plaintiff was a member, and carried the merchandise into a new firm, styled Hamilton Easter & Company, at the prices at which it was put down in the settlement, mixed it with new stock, purchased from time to time, and sold it indiscrimately with such new stock, and that from such sales made from day to day profits to some extent were realized, and it is supposed, and the Auditor has proceeded upon that hypothesis, that of these profits the complainant is entitled to a proportionate share.

The evidence, it may not be amiss to remark, shows that it is far more probable that a loss was sustained by the defendants in the sales of this stock of goods than that profits were realized, and we are instructed in the same way that of the debts due to the firm, and which, in the settlement, were all assumed to be solvent, many were wholly insolvent. The presumption, therefore, is very strong, not to say irresistible, that if the merchandise on hand at the time this partnership was dissolved, had been at once pressed upon the market and sold, and the other assets converted into cash, the balance due from the plaintiff would have been materially increased.

It is said, however, that as the defendants did not pursue this course, but carried the stock of the old into the business of the new firm, exposing it to all the perils of such new adventure, the complainant is entitled to treat the new trade as a continuation of the old business, and to claim such proportion of the profits of the former as he might have claimed if the old trade had been continued, and this is said to be the equitable rule in such cases.

In this case it will be recollected, that the whole capital was furnished by the defendants, and, therefore, so far as capital is concerned, the dangers incident to the new trade to which the old stock was exposed, are dangers in which the complainant had no concern, especially when we reflect that it appears by the balance-sheet or settlement, made on the day of the dissolution of the partnership, that he had overdrawn his share of the profits up to that period. Having supplied no part of the capital, and having overdrawn his share of the profits, his proportion of the risk of the new trade would seem to be very inconsiderable.

That the rule contended for by the complainant's solicitor is not a universal one, is shown by a remark of *Lord Eldon* in the case of *Brown* vs. *De Tastett*, 2 *Russell*, 347, in which the doctrine supposed to be established in *Crawshay* vs. *Collins*, page 325 of the same book, was brought in review and considered productive of great hardship. The *Lord Chancellor* observed in reply to the remarks of the counsel upon the case of *Crawshay* vs. *Collins*, "that he did not mean to say that in all cases of a partnership the consequence of carrying on the business would be that the profits should be divided, as if the parties had not died or become bankrupt, but that such might be the law in some cases." "The general principle ought to be this, that as it is quite competent to the parties to settle the accounts, and to mark out the relation between themselves as debtor and creditor, so where there is a non-settlement of the account, (though a settlement may sometimes introduce great hardships and difficulties,) yet those who choose to employ the property of another for the purposes of their trade, exposing it to all the risks of insolvency and bankruptcy, have no right to say that the account shall not be taken, if it can be taken without incurring difficulties which might embarrass the house to such an extent as to make it unjust to demand it."

It would seem, therefore, that the right to share in the profits resulting from a continuation of the business after the dissolution of the partnership is founded upon the exposure of the property of the partner who goes out to the risks of the new

business, and that if the partner going out has no property to be thus exposed, the principle cannot apply. *Collyer on Part.*, 181, 182. The case of *Crawshay* vs. *Collins*, 2 *Russell*, 325, cited by the counsel for the plaintiff was a case in which the bankrupt partner, (whose assignees were allowed to participate in the profits made by the continuing partners subsequently to the bankruptcy,) was entitled not only to a share of the profits during the continuance of the partnerships, but to a proportion of the *capital* also. In deciding that case, *Lord Eldon* said, "the continuing partner has made profits by the use of the funds which belonged to the partnership itself, and although he added other funds of his own, yet as he put the partnership fund in hazard, the addition of his own funds should not bring to him and take away from others all the profits which have arisen from the property of the original partnership, which was in truth the foundation of the concern." He further observed that his opinion was founded upon the particular circumstances of that case, and was not to be regarded as laying down a principle for the decision of other cases.

Besides, the partnership in the case of *Crawshay* vs. *Collins*, was founded upon a parol agreement for an indefinite period, and of course contained no provision for its dissolution. It was, in fact, terminated by the bankruptcy of one of the partners, after which the business was carried on by the others, and profits made, in part, at least, out of the pre-existing capital, and the Lord Chancellor dwelt upon this circumstance, and upon the importance that all partnerships should subsist upon written articles, "and that they should lay down a clear rule in what way the interests of the partners in the different events that may occur are to be disposed of." The Chancellor also made the additional observation, which was, that "the rule which is to be applied must be deduced in almost every case from the particular circumstances of that very case."

Now, looking to the circumstances of this case, to the fact that the whole capital was furnished by the defendants; that the complainant, (estimating the stock on hand at prices above those it probably sold for, and assuming the debts due the firm

7*

to be good, when the proof shows that many of them were bad,) had drawn out more than his share of the profits, seeing that the articles of copartnership provided for its termination in various contingencies, in precise terms, and that it was brought to a close in exact conformity with the articles. I cannot bring myself to think that this is a case to which the principle contended for by the complainant's solicitor is applicable, and shall, therefore, consider it my duty to dismiss the bill, for without the aid of this principle, it seems impossible to regard him as the creditor of the defendants.

That the defendants had a clear legal right to terminate the partnership, and take possession of the property in the mode charged in the bill, is manifest from the decree of the Court of Appeals, which, without regard to the answer, dissolved the injunction, that, of course, deciding that even upon the bill the complainant had no title to interfere in that way.

THOMAS S. ALEXANDER, for Complainant.
JOHN NELSON, for Defendant.